IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID OSADA,

                  Plaintiff,

        v.

EXPERIAN INFORMATION
SOLUTIONS, INC.,

                  Defendant.

Case No. 11 C 2856

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Pending before the Court are Plaintiff's Motion for Class Certification and his Motion to Compel Discovery Responses from Defendant.  For the reasons stated herein, both motions are granted in part and denied in part.

### II.  FACTUAL BACKGROUND

This simplified background is based on the parties' pleadings to date, but does not constitute findings of fact.  In early 2008, Plaintiff David Osada ("Osada") applied for, but did not close on, a mortgage loan.  However, in October 2008, he discovered that two mortgage loans had been taken out in his name on properties that he knew nothing about.  Each loan exceeded $300,000.

Plaintiff contacted Defendant Experian Information Solutions ("Experian"), a credit reporting agency, on October 27, 2008 to discuss his credit report.  By then, both mortgages were listed as

past due, and the report listed the fraudulent addresses as his. The next day, Plaintiff filed a police report with the Niles Police Department, but did not send it to Experian.

One of the mortgages evidently went into foreclosure in November 2008, and the other in July 2009. The courts in both actions apparently recognized, at some point, that the mortgages were the product of identity theft.

Plaintiff executed a Federal Trade Commission ("FTC") Identity Theft Victims' Complaint and Affidavit in October 2009. He then wrote to Experian in January 2010, requesting that both mortgages be blocked – that is, removed from his credit report. He attached his FTC affidavit, the Niles police report, and proof of his residence. Experian wrote back on January 26, 2010, telling Plaintiff that his submissions were insufficient. (Experian has since admitted that the materials were not insufficient under its policies.) Experian's letter (the "Does Not Meet Guidelines Letter") states, in part:

> We are responding to your request that information in your personal credit report be blocked due to alleged fraud. The identity theft report that you sent us does not meet the guidelines established by the federal Fair Credit Reporting Act; therefore, we are unable to honor your request to block information. However, if you provided specific information, we are investigating the information you questioned with the sources. If you still wish to have this information blocked, please send us a valid identity theft report.

The letter goes on to list what Experian looks for in such a report, but does not specify what was missing from the materials submitted. Experian claims that its policy of not specifying what

information is missing strikes an important balance; it does not provide a roadmap for fraudsters or credit repair organizations, but does enough to ensure that identity theft victims can discover what they need to do to successfully block any improper credit information.

Plaintiff alleges that Experian merely "verified" the disputed accounts with the lenders, who maintained that the accounts were valid. On February 17, 2010, Experian sent Plaintiff another letter and an updated credit report, showing the "verified" accounts. Plaintiff claims that as of January 24, 2011, both mortgages remained on his Experian credit report.

In 2011, Plaintiff resubmitted his materials to Experian. Plaintiff filed this suit on April 28, 2011. Experian responded to his letter on May 5, 2011, writing: "We are unable to honor your request. Our records indicate that the police report we have on file is more than a year old. Due to your ongoing fraud situation, you will need to submit a new/amended police report, obtained within the past year." The letter (the "One Year Letter") goes on to list Experian's requirements for such a police report. Experian claims that, in its experience, many block requests submitted with a police report older than one year are fraudulent, but that individuals with genuine claims will obtain a new police report when asked.

There is no dispute that Experian sent the January 2010 and May 2011 letters. There is extensive dispute over whether Plaintiff

received and/or read them.  At deposition, Plaintiff reviewed the letters, and reported no specific recollection of when and if he received them, as he had received a large volume of correspondence during that time.  He had, however, reviewed them with his counsel.

Plaintiff brings a claim on behalf of two putative classes, as well as two individual claims.  In the class claim, Plaintiff alleges that Experian willfully failed to block information that class members identified as identity theft-related, instead treating such requests as ordinary credit disputes.  The proposed "One Year" class consists of:

> All persons from whom (1) Experian received an identity theft report and written request to block information in that person's consumer report alleged to result from identity theft; and (2) in response to which Experian, between April 28, 2009 and May 18, 2011, sent a letter [containing the language from the One Year Letter set out above].

The proposed "Does Not Meet Guidelines" class includes:

> All persons from whom (1) Experian received an identity theft report and written request to block information in that person's consumer report alleged to result from the identity theft; (2) in response to which Experian sent a letter between April 28, 2009 and May 18, 2011 stating at least in part [the language from the Does Not Meet Guidelines Letter quoted above]; and (3) to which Experian responded further by sending that person his or her consumer report to the same address identified in the written request.
>
> Plaintiff seeks statutory and punitive damages, as well as fees

and costs, on the behalf of both classes. In his individual claims, he also seeks compensatory damages.

### III. **LEGAL STANDARD**

To certify a class under Fed. R. Civ. P. 23 ("Rule 23"), a court must find: (a) that the class is definite enough that its members are identifiable, and (b) that it satisfies not only the requirements of Rule 23(a), but also one of the three subsections of Rule 23(b). *Jamie S. v. Milwaukee Pub. Sch.,* 668 F.3d 481, 493 (7th Cir. 2012). Rule 23(a) requires that class members be so numerous that joining each is impracticable (numerosity); that there be class-wide questions of law or fact (commonality); that the named parties' claims or defenses be typical of the class (typicality); and that the representative be able to protect the class's interests adequately (adequacy). Rule 23(a).

Here, Plaintiff proceeds under Rule 23(b)(3), which provides that certification is only appropriate if the common questions of law or fact "predominate over any questions affecting only individual members, and . . . a class action is superior" to other available adjudication methods. Rule 23(b)(3). The Court must conduct a rigorous analysis to determine whether Plaintiff has shown, by a preponderance of the evidence, that the class meets the Rule 23 criteria. *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 2012 WL 129991, at *4 (7th Cir. 2012). In doing so, the Court must resolve material disputed facts. *Id.*

- 5 -

# IV. DISCUSSION

In 2003, Congress amended the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681 *et seq.*, to increase protection for victims of identity theft. *See* Pub. L. 108-159 (December 4, 2003). One new provision generally requires "consumer reporting agencies" ("CRAs") such as Experian to block information in a consumer's credit report that resulted from identity theft within four days of receiving certain documentation of the identity theft. 15 U.S.C. § 1681c-2(a). That documentation includes: proof of the consumer's identity; a copy of "an identity theft report"; identification of what information should be blocked; and the consumer's statement that the disputed information does not relate to any transaction that she made. *Id.* Once a CRA receives the necessary information and places the block, it must inform the "furnisher" of the blocked information about the block, as well. 15 U.S.C. § 1681c-2(b).

The FCRA defines "identity theft" and "identity theft report" and authorizes the FTC to add to those definitions by regulation. 15 U.S.C. § 1681a(q). Thus, for our purposes, an "identity theft report" is a report that: (1) alleges identity theft with as much specificity as the consumer can offer; (2) is a copy of "an official, valid report" that the consumer filed with a federal, state, or local law enforcement agency, and which subjected the consumer to criminal penalties if the report is false; and (3) "may include additional information or documentation that . . . [a CRA] reasonably requests

for the purpose of determining the validity of the alleged identity theft[.]" 16 C.F.R. § 603.3(a).

However, if a CRA requests additional information, it must do so within 15 days of receiving the consumer's block request or identity theft report, and generally must make any additional requests and its final decision on whether to place the block within 15 days after its first request for additional information. *Id.*

The regulation also provides examples of when it would or would not be reasonable to request additional information or documentation. 16 C.F.R. § 603.3(b,c). One such example provides that, if a CRA receives a police report containing detailed information as well the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without "an identifiable concern," such as an indication that the report was fraudulent. 16 C.F.R. § 603.3(c)(1).

The FCRA gives CRAs some authority to decline or rescind requested blocks. 15 U.S.C. § 1681c-2(c). A CRA may do so if it "reasonably determines that[:]" (a) the block was requested or placed in error; (b) the block or request was based on a material misrepresentation of fact by the consumer; or (c) the consumer received goods, services, or money as a result of the blocked transaction. 15 U.S.C. § 1681c-2(c)(1). If a CRA declines or rescinds a block, it must "promptly" notify the consumer "in the same

manner as . . . under Section 1681i(a)(5)(B) of this title." 15 U.S.C. § 1681c-2(c)(2). Section 1681i(a)(5)(B), as applicable here, requires that a CRA notify the consumer in writing (or by other consumer-approved means) within five days. 15 U.S.C. § 1681i(a)(5)(B)(ii). "[A]s part of, or in addition to" that notice, the CRA must tell the consumer what has been declined or un-blocked, the name and contact information of the business that furnished the information at issue, and that the consumer has a right to add a statement to her consumer report that the information is disputed. 15 U.S.C. § 1681i(a)(5)(B)(iii).

Accordingly, the FCRA gives CRAs discretion in two areas: "reasonably requesting" additional information, and "reasonably determining" whether a block request is fraudulent or mistaken. The Court gives the "reasonable request" requirement its most natural reading — that both the substance and manner of request must be reasonable.

The parties disagree over whether the letters sent to Mr. Osada were outright denials (which require an actual determination that there was fraud or mistake) or whether they were interim denials that constituted permissible requests for additional information. The regulation does not explicitly authorize CRAs to deny a block request pending additional information; however, the FTC brochure for identity theft victims appears to contemplate such interim denials.

*See Federal Trade Commission, Defend: Recover From Identity Theft, http://www.ftc.gov/bcp/edu/microsites/idtheft/ consumers/defend.html* (noting that CRAs may decline an identity theft report that lacks sufficient detail, and "[i]n that case, the [CRAs] have certain time frames for responding to your [block request] with requests for additional information.").

Any person who willfully fails to comply with the FCRA can be liable to the affected consumer for: a) either actual damages or statutory damages of $100 to $1,000, b) punitive damages, and c) fees and costs. 15 U.S.C. § 1681n. Negligent violations bring liability for actual damages, plus fees and costs. 15 U.S.C. § 1681o. In the class claim, Plaintiff proceeds under the "willfulness" provision.

## A.   The One-Year Class

Because the two classes challenge different Experian policies, the Court considers each in turn.

### 1.   *Rule 23 (a) Factors*

#### a.   *Numerosity and Definiteness*

In answering the Amended Complaint, Experian denied that the proposed class is numerous enough to satisfy Rule 23. However, it admitted in discovery that it sent the One Year Letter 2,052 times during the relevant period, and does not press a numerosity objection in its certification briefing. The Court finds that the proposed class is populous enough and that its members can be readily ascertained.

## b. Commonality

Rule 23 requires that a class have questions of law or fact common to all members. FED. R. CIV. P. 23(a). Each class member must have suffered the same injury, not merely a violation of the same statute. *Wal-Mart Stores, Inc. v. Dukes et al.*, 131 S.Ct. 2541, 2551 (2011). That is, class claims must contain a common contention, determining the truth or falsity of which "will resolve any issue that is central to the validity of each one of the claims in one stroke." *Id*. Showing that all class members were subjected to the same policy may suffice. *See id* at 2553.

A common "injury" means something slightly different under the FCRA than it did in *Dukes*. Consumers are entitled to statutory damages for willful violations of the FCRA, even if they cannot prove any injury in the ordinary sense of the word. *Shlahtichman v. 1-800 Contacts, Inc.,* 615 F.3d 794, 796 (7th Cir. 2010). The FCRA gives consumers procedural rights; a consumer need only show that the FCRA was violated with regard to her own information to show a sufficient injury. *Henry v. Teletrack, Inc.,* No. 11-CV-4424, 2012 WL 769763, at *3 (N.D. Ill. March 07, 2012).

Plaintiff argues that the common question is whether the FCRA permits Experian to require that the police reports be less than one year old before blocking credit information. Defendant argues that there is no common injury because many, if not most, of the block requests in response to which Experian sent the One Year Letter were

- 10 -

fraudulent; because the requests were invalid, Defendant argues, no one was injured.  Experian has made no effort to show how many One-Year Letter recipients later successfully blocked the requested information, so there is no evidence by which this Court can evaluate its argument.  In any event, as noted above, that is not the sort of injury that the FCRA requires; accordingly, the Court need not determine whether each block request was valid in order to evaluate the One Year policy.  *Cf.* 15 U.S.C. § 1681c-2(a) (tying CRA obligations to "alleged" identity theft).

Similarly, Defendant argues that because the statute gives it some discretion to deny claims, the Court will have to determine whether each individual claim was reasonably denied, and if not, whether each denial was willful or wanton.  However, there is no dispute that each person who received the One-Year Letter had his or her claim denied for the same reason and pursuant to the same uniform policy.  *See* Hughes Dep. 98:3-99:10 (noting that consumers received the One-Year Letter only if their Identity Theft Report otherwise met Experian's requirements).  The Court agrees with Plaintiff that whether Experian's express written policy conforms to the FCRA is a question capable of class-wide resolution, and that the commonality requirement is met.

### c.  *Typicality and Adequacy*

Under Rule 23(a), a named plaintiff must show that his claims and defenses are typical of the class, and that he and his counsel

can adequately represent the class's interest in litigation. A named plaintiff may be inadequate if his interests conflict with those of the class, or if he is subject to a defense inapplicable to the class as a whole. *Boundas v. Abercrombie & Fitch Stores, Inc.*, --- F.R.D. ---, 2012 WL 748769, at *3 (N.D. Ill. 2012). The commonality and typicality requirements tend to merge. *Dukes,* 131 S.Ct. at 2551. *See also, Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011) (noting that "the usual practical significance of lack of typicality . . . is that it undermines the adequacy of the named plaintiff as a [class] representative[.]").

Plaintiff argues that his counsel is sufficiently qualified and experienced to represent the class. Although Experian denied this allegation in answering the Amended Complaint, it makes no attack on Plaintiff's counsel's qualifications in the certification briefing. Based on Plaintiff's submissions, the Court concludes that his counsel can adequately represent the putative class.

Plaintiff argues that he adequately represents the class because his interests are not antagonistic to the class members' and because all of their claims are identical by definition — every class member's block request was denied for the same reason and with the same letter. As a general matter, the Court agrees. Defendant, however, raises several objections.

First, Experian argues that Plaintiff is atypical because, were it not for Experian's error, Plaintiff's report would have been

accepted initially and he would not have resubmitted his report after it was one year old. That mistake, Experian argues, cannot be fairly extrapolated to the remainder of the class. It is true that the reason each class member submitted an old police report likely varied widely. There is no indication, however, that such variations affected Experian's response (with the possible exception of some active-duty military personnel – by Experian's account, however, their claims would not have been denied, and so they would not be class members). Accordingly, Plaintiff's factual background need not be identical to the other class members for him to adequately represent them.

Next, Experian argues that the long gaps between Mr. Osada's interactions with Experian subject him to unique defenses, making him inadequately representatI've. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011). Although Experian alleged several affirmative defenses in its Answer, it has not identified which, if any, it relies upon for this argument. On this record, none of those defenses so obviously overbear the common issues in the case as to make Plaintiff impermissibly unique.

Experian also argues that, having admitted that he never read the letter, Plaintiff cannot represent a class of those who did. As noted above, Plaintiff could not specifically recall when or if he read the One Year Letter before reviewing it with his counsel. This

fuzziness or failure of recollection is of greater concern with the second class, as discussed below. Here, however, the common injury is the rejection of a block request due to an old police report. The letter itself, while useful for identifying class members, is not the source of the injury. *Cf. Hillis v. Equifax Consumer Services, Inc.,* 237 F.R.D. 491, 497 (N.D.Ga. 2006) (where a claim involved allegedly misleading representations, named plaintiff's inability to recall having seen most of the representations was fatal to the class). Accordingly, Plaintiff's inability to recall when he first saw the letter does not make him inadequate.

Experian next objects that Plaintiff conceded in deposition that the One Year policy is reasonable. Some courts have found named plaintiffs who make damaging concessions in deposition to be inadequate representatives. *See, e.g., id.* at 502-03. In *Hillis,* although the standard for evaluating the allegedly misleading statements was objective, the court noted that the jury would be influenced by the plaintiff's statement that he had not been misled. That prejudice to class members, the court noted, made him an inadequate representative. *Id.* (Of course, this Court's role is not to assure that the class wins, but to ensure that class members with stronger claims are not prejudiced by a representative with a weak one. *See CE Design Ltd.*, 637 F.3d at 726.)

Here, under what can only be described as badgering interrogation, Mr. Osada made two potentially damaging statements:

first, he stated that Experian was reasonable for asking him to obtain a new police report. Osada Dep. 170:14-171:1. Second, assuming that some people would try to take undue advantage of the debt-blocking remedies, Mr. Osada conceded that "it makes sense" for Experian to have the One Year policy. Osada Dep. 183:7-184:20. Throughout the deposition, however, he also objected to the policy and to having to obtain a second police report for what he sees as the same issue. Reading the deposition as a whole, the Court finds that Mr. Osada has not defeated his own claim. Whether his statements are sufficiently damaging to make him a poor representative is a closer question, but the Court concludes that they are not so damaging as to preclude class certification. It also is doubtful that the Plaintiff would be allowed to present such opinions.

Finally, Experian argues that Plaintiff seeks to enrich himself at class's expense by seeking only statutory damages on their behalf. The Seventh Circuit has already rejected this argument in the FCRA context. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952-53 (7th Cir. 2006). As will be discussed below, here, as in *Murray,* the average claim for actual damages is likely to be small, and class members with substantial actual damages may opt out of the class. *Id.* at 953. Accordingly, the Court concludes that Plaintiff has established that he is an adequate and sufficiently typical representative plaintiff.

## 2.  *Rule 23 (b) Factors*

Having found that the putative class satisfies Rule 23(a), the Court must ask whether it meets the requirements of Rule 23(b)(3) — namely, that common questions of law or fact predominate over individual questions, and that a class action is superior to other available adjudication options.

### a.  *Predominance*

Plaintiff's predominance argument mirrors his commonality argument — that all class members received the same form rejection pursuant to the same policy.  Once again, Experian objects that the reasonableness of each denial (and its willfulness, if it was unreasonable) must be determined case by case.  This is so, Experian argues, because there are "scores" of reasons why Experian could decline a block request.  This argument is better suited to the Does Not Meet Guidelines class, given that Experian's own 30(b)(6) deposition witness explained that consumers receive the One Year Letter only if their Identity Theft Report otherwise *meets* Experian's requirements.  Hughes Dep. 98:3-99:10 (explaining the two-tier process).

It is unclear from Experian's pleadings whether it contends that the One Year Letter is a final denial under 15 U.S.C. § 1681c-2(c) or a request for additional information under 16 C.F.R. § 603.3.  In either case, the policy must at least be reasonable. Because it seems to be undisputed that there is a single, objective criterion by which

the One Year policy mandates that these block requests be denied, the common question of whether that policy is permissible under the FCRA towers above all the rest. Accordingly, Plaintiff has shown that common issues predominate over individual ones in the One Year class.

### b. Superiority

Plaintiff argues that class treatment is superior because the relatively small statutory damages (between $100 and $1,000) give class members little incentive to litigate individually. Defendant counters that this is not so, because the FCRA provides for actual damages and fee shifting, increasing the potential recovery for members of the putative class who might litigate on their own. Indeed, Experian argues, Mr. Osada's own case belies his argument, as he filed a suit for actual damages before this case became a class action.

The magnitude of any injury to class members is critical to evaluating whether class treatment is appropriate, and such injuries are often small in FCRA cases. *See Murray*, 434 F.3d at 952-53. Here, the Court concludes that any injury to most class members would be small, because most recipients of the One Year Letter would comply with Experian's request and eventually vindicate any valid blocking requests. Indeed, Experian's 30(b)(6) deposition witness took exactly that position — that consumers with genuine claims will overcome whatever obstacles these letters may pose. Hughes Dep. 56:9-57:9. Having taken that position to defend the policy, it ill

suits Experian to argue now that a class should not be certified because compensation for actual damages is available.

Because there appears to be little incentive or benefit to class members to litigate these claims individually, and no party has raised objections to, for example, litigating in this forum, the Court concludes that Plaintiff has demonstrated that a class action is the best way to address these claims. Having thus found that the One Year Class satisfies Rule 23, the Court concludes that the class should be certified.

### B. Does Not Meet Guidelines Class

#### 1. Rule 23 (a) Factors

##### a. Numerosity

As above, Experian initially denied that this class is sufficiently numerous, but has dropped that argument (having admitted to sending the letter 16,800 times during the relevant period). Accordingly, the class easily satisfies the numerosity requirement and its members are readily ascertainable.

##### b. Commonality

Plaintiff argues that the question common to this class is whether the Does Not Meet Guidelines letter had to specify what information was missing from an Identity Theft Report. Although Plaintiff argues that the common injury is Experian's refusal to block the disputed information, Plaintiff's framing of the common question dictates that the common injury, if any, is Experian's

allegedly unreasonable response to incomplete block requests.  In response, Experian raises many of the arguments discussed above, including that Experian's exercise of discretion must be evaluated on an individual basis, and that there is no injury because many of the claims were fraudulent.  As noted above, the FCRA creates procedural rights in consumers; having rejected these arguments once, the Court need not reconsider them here.  *See Gardner v. Equifax Information Services, LLC,* Civil No. 06-3102, 2007 WL 2261688, at *4 (D. Minn. Aug. 6, 2007) (finding that the legality of an Equifax business policy constituted a common legal question).

Defendant also objects that the legal question Plaintiff poses — whether Experian must specify what information is missing from a block request — lacks support in the law.  In doing so, however, Defendant merely argues that the answer to Plaintiff's question is "no," which does nothing to refute its existence.  Although the certification inquiry may overlap somewhat with the merits of the case, *Dukes*, 131 S.Ct. at 2551, the Seventh Circuit is clear that courts should not refuse to certify a class on the belief that it will lose.  *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). Plaintiff has shown adequate commonality.

### c.  *Typicality and Adequacy*

Having already found class counsel sufficient, the Court will not repeat that analysis.  Plaintiff argues that he is adequately representative because he suffered the same treatment and injury as

all class members — the rejection of his block request without specification as to what was missing.

Defendant argues that Plaintiff cannot be typical, because Experian admits that he received the Does Not Meet Guidelines letter in error. Assuming that Plaintiff read the letter, Experian argues that he (unlike most class members) would have been justifiably confused about why his materials were rejected. Thus, Experian argues, even if sending Plaintiff the Does Not Meet Guidelines letter was unreasonable, this does not prove that the other rejections were equally unreasonable. Again, however, Plaintiff is challenging the letter's lack of specificity – *not* Experian's decision to send it. The identified factual distinction therefore renders Plaintiff neither inadequate as a class representative nor impermissibly atypical.

Defendant again argues that Plaintiff has conceded not receiving and/or reading the letter. Experian raises a standing as well as an adequacy and typicality challenge, claiming that Plaintiff cannot have been injured by a letter he did not read. As Judge Sharon Johnson Coleman recently observed, however, an injury for standing purposes is the invasion a legally protected right; a plaintiff can have standing under the FCRA if the statute was violated as to his credit information – whether or not he suffered any additional detriment. *Teletrack,* 2012 WL 769763, at *3. *See also Murray v. New Cingular Wireless Services, Inc.*, 523 F.3d 719, 725-26 (7th Cir.

2008) ("statutory damages . . . may range from $100 to $1,000 per violation whether or not the consumer was injured."). If Plaintiff is correct that Experian's policy of not specifying what information is missing violates the FCRA, the statute would seem to have been violated as to him, giving him standing.

However, regarding Plaintiff's adequacy as a class representative, the allegation in this case is that Experian's letter is unlawfully unreasonable. As such, the jury will have to evaluate the benefits and burdens of Experian's policy not to identify missing information. Without remembering whether and when he received the letter, his response, and any impact it had on him, Plaintiff is necessarily inadequate to represent the class, because he cannot offer competent evidence of the burdens that the policy and letter impose on consumers. Plaintiff has not carried his burden of showing adequacy, and the class fails.

### *2. Rule 23 (b) Factors*

Because the Court concludes that Mr. Osada cannot be an adequate class representative to the second putative class, it need not address the Rule 23(b)(3) factors.

### C. Motion to Compel

Plaintiff asks this Court to compel responses to three of his Requests for Production ("RFPs"). The first two requests relate to Experian's practice of placing advertisements for credit monitoring services in some of its communications with possible victims of

identity theft.  Those services are offered by Experian's "sister" company, which is owned by Experian's parent company, Experian Plc. The third request relates to any complaints Experian may have received from their business subscribers about account information being blocked.  Plaintiff intends to use evidence from these three RFPs to support his allegation that Experian makes it difficult to block information in order to sell more credit monitoring services and keep its business subscribers happy.  This Court has reaffirmed countless times that it takes a broad view of relevance in discovery. Accordingly, Defendant's argument the evidence is not discoverable because Plaintiff is wrong on the merits warrants no further discussion.  For the reasons that follow, the request is granted in part and denied in part.

### 1.  *RFPs One and Two*

In RFP One, Plaintiff seeks "[a]ll documents describing any Experian entity's income from the sale of its products and services" relating to credit monitoring or identity theft. Similarly, RFP Two requests all documents "describing any Experian entity's policies" for placing ads for such services in consumer disclosures.

Experian first objects that Plaintiff seeks information from consumerinfo.com ("CIC"), a separate corporation not a party to this suit.  Although it admits to engaging in "limited cross-promotion" with CIC, Experian objects that it does not keep CIC's profit records.  Plaintiff argues that nothing prevents Experian from

turning over documents that are actually in its possession — such as agreements between Experian and CIC regarding advertising placement. The Court is inclined to agree that Experian should turn over whatever relevant documents are actually in its possession. The Court does not agree, however, that the companies – despite sharing a business address and some officers and directors – are so intertwined that it is appropriate to compel CIC and Experian, Plc. to turn over their separate records in response to the RFP. *Cf. Wachovia Securities, LLC v. Loop Corp.*, No. 05 C 3788, 2008 WL 2625907 (N.D. Ill. June 27, 2008) (discovery ordered where the corporate affiliate was a wholly-owned subsidiary with a virtually identical corporate existence).

Next, Defendant argues that although Plaintiff received two advertisements for credit monitoring services, those advertisements came before either of the two letters at issue in this suit. Therefore, Experian argues, they are irrelevant. Plaintiff argues that they are relevant because they demonstrate that Experian had a financial incentive to make blocking information difficult (either through advertising revenue or on behalf of CIC and Experian, Plc.), which shows that the alleged FCRA violations are willful. Although evidence to support that claim is thin, the Court concludes that Plaintiff has made a sufficient showing of relevance to warrant production.

Finally, Defendant argues that the information is not discoverable because it is too inflammatory to be admissible. This sort of objection, however, is best reserved for trial, when the Court can actually examine the proffered evidence.

### 2.  RFP Three

In RFP Three, Plaintiff seeks "[a]ll communications and documents relating to communications between Experian and its subscribers or other furnishers of credit information about Experian's blocking of information alleged to result from identity theft."  Plaintiff plans to argue that Experian makes blocking difficult in order to appease corporate subscribers who wish collect on the allegedly fraudulent accounts.  Defendant attacks Plaintiff's interpretation of the evidence he offers to support this theory's viability.  As noted above, however, such objections are misplaced. Plaintiff is entitled to reasonable discovery in support of his willfulness claim.

Defendant next objects that the FCRA's privacy restrictions preclude it from turning over the requested information.  That problem is illusory; the FCRA allows CRAs to release such information pursuant to a court order, 15 U.S.C. §§ 1681b, 1681e, and in any event, Plaintiff has offered to accept the records in redacted form.

Finally, Experian argues that records of such communications probably do not exist, and that searching for them would require a hand search of all of their database files, which would take years

and millions of dollars. Plaintiff argues that responsive documents can be found through computer searches, and can also be found outside of individual consumer credit files — for example, there may be emails or meeting documents discussing subscribers' objections to Experian's blocking policy. The Court agrees with Defendant that requiring it to search through the individual credit files is not warranted at this stage. However, asking Defendant to search through its general corporate files for relevant documents does not appear to be unduly burdensome. As such, Defendant is to produce responsive documents from its client relations departments, as well as any other documents dealing with general complaints from subscribers about account blocking.

## V. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Grants class certification for the One Year class;

2. Denies certification for the Does Not Meet Guidelines class; and

3. Grants in part and denies in part Plaintiff's Motion to Compel.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:**     3/28/2012