**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | |
|---|---|
| DAVID OSADA and KIMBERLY HOVANEC ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EXPERIAN INFORMATION SOLUTIONS, ) <br> INC., ) <br> ) <br> Defendants. ) <br> ) | Case No. 11 C 2856 <br><br> Judge Harry D. Leinenweber <br><br> JURY DEMAND |

**SECOND AMENDED CLASS ACTION COMPLAINT**

**Introduction**

1. Plaintiffs, David Osada and Kimberly Hovanec, bring this action against Experian Information Solutions, Inc. ("Experian") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681.

2. The FCRA was amended in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

3. Prior to the 2003 amendments, victims of identity theft were afforded no special protections under FCRA. As such, consumer reporting agencies, such as Experian, were under no obligation to treat an identity theft claim any different than a common dispute.

4. The 2003 amendments made it easier for victims of identity theft to correct their credit information by requiring consumer reporting agencies to "block" the reporting of fraudulent information on their credit reports upon receipt of a request to do so supported by a valid identity theft report. *15 U.S.C. §1681c-2(a)*.

5.   The ability to obtain a "block" of information is especially important to consumers because once a block is in place, the account is permanently removed from the consumer's credit report *and* creditors are prohibited from sending the blocked account to collections. *See 15 U.S.C. §1681m(f)*.

6.   A normal consumer dispute (where no claim of identity theft is made), on the other hand, can at best result only in the *deletion* of an account, which removes the account from the consumer's credit report but allows the creditor to continue with collections unabated. *See 15 U.S.C. §1681i*.

7.   A Consumer Reporting Agency ("CRA") may decline a consumer's request to "block" information only if the CRA reasonably determines that the consumer's request is fraudulent or made in error. *See 15 U.S.C. §1681c-2(c)(1)*.

8.   In the case of such a declination, the CRA must then notify the consumer in writing of the business name and address of any furnisher of information that Defendant contacted upon receiving Plaintiff's identity theft report and that the consumer has a right to add a statement to her file disputing the accuracy or completeness of the disputed information. *See 15 U..S.C. §1681c-2(c)(2); 15 U..S.C. §1681i(a)(5)(B)*.

9.   In the absence of such a determination of fraud or mistake, a CRA cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. *16 C.F.R. §603.3(a)(3)(I)*.

10.   Mr. Osada and brings claims on behalf of both the following classes[1] and Ms.

---

[1] On March 28, 2012, the court certified the One Year Class, but declined to certify the Does Not Meet The Guidelines Class as the court found that Mr. Osada was not an adequate representative for that class. Doc. 62. The allegation that Mr. Osada seeks to represent both classes is solely to preserve all rights and arguments for appellate purposes.

Hovanec brings claims only on behalf of the Does Not Meet The Guidelines Class:

> The "One Year Class," defined as:
> "All persons from whom
> (1) Experian received an identity theft report and written request to block information in that person's consumer report alleged to result from the identity theft; and
> (2) in response to which Experian, between April 28, 2009 and May 18, 2011, sent a letter stating at least in part: 'We are unable to honor your request. Our records indicate that the police report we have on file is more than a year old. Due to your ongoing fraud situation, you will need to submit a new/amended police report, obtained within the past year,'" a form of which is attached hereto as Exhibit 1."

> The "Does Not Meet The Guidelines Class," defined as:
> "All persons to whom Experian sent a letter between April 28, 2009 and May 18, 2011 stating at least in part: 'We are responding to your request that information in your personal credit report be blocked due to alleged fraud. The identity theft report that you sent us does not meet the guidelines established by the federal Fair Credit Reporting Act; therefore we are unable to honor your request to block information. However, if you provided specific information, we are investigating the information you questioned with the sources,' a form of which is attached hereto as Exhibit 2."

## Parties

11. Plaintiffs are individuals and therefore are "consumer[s]" as defined by the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq ("FCRA") at §1681a (c).

12. At all times relevant to this case, Mr. Osada resided in Niles, Illinois, which is in this District.

13. Plaintiff, Kimberly Hovanec is a resident of Chicago, Illinois and resides in this District.

14. Experian is an Ohio Corporation whose registered agent in Illinois is CT Corporation, 208 S. LaSalle, Chicago, IL 60604.

15. Experian is engaged in the business of credit reporting and is commonly referred to as a "Credit Bureau". Experian regularly obtains and analyzes financial information about consumers and compiles the information into "credit reports", which it provides to third parties.

16. Experian maintains and reports credit information about millions of consumers and refers to itself as "America's largest credit bureau and reporting agency."

17. Experian is a "consumer reporting agency" ("CRA") as defined by the FCRA at § 1681a (f).

## Jurisdiction and Venue

18. This lawsuit, brought pursuant to 15 U.S.C. §1681 *et seq.*, presents a federal question and jurisdiction therefore arises under 28 U.S.C. § 1331.

19. Venue is proper because a substantial part of the events giving rise to this action occurred in this Judicial District.

## Factual Allegations Relating to Osada

20. In the Spring of 2008, Mr. Osada applied for a mortgage loan at lendingtree.com.

21. Although his application was approved, he chose not to close on the mortgage loan.

22. To his surprise, in October 2008, he received two closing statements in the mail from Chase and Taylor, Bean & Whitaker Mortgage Corp. ("Taylor"), each regarding a different mortgage loan for a property previously unknown to Plaintiff in the south side of Chicago. Each closing statement bore his name and social security number, but his signature was forged.

23. The Taylor mortgage loan, dated May 15, 2008, concerned a property at 6837 S. Talman Ave, Chicago, IL 60629 and was in the sum of $313,500.00

24. The Chase mortgage loan, dated May 27, 2008, concerned a property at 7843 S. Evans Ave, Chicago, IL 60619 and was also in the sum of $313,500.00.

25. Until he received the closing statements in the mail, Mr. Osada had no knowledge of either mortgage loan or that his identity had been stolen to fraudulently obtain the loans.

26. Mr. Osada has never resided at either the S. Talman or the S. Evans properties.

27. Immediately upon receipt of the closing statement, Mr. Osada contacted the mortgage companies in order to dispute the accounts and to inquire how and why two mortgages were taken out in his name and without his knowledge.

28. Shortly after receipt of the closing statements Plaintiff also contacted Experian, as well as the other two credit bureaus, to place his accounts on fraud alert.

29. As of October 27, 2008, Experian's credit report regarding Mr. Osada showed both the Chase and Taylor mortgage loans as being "Open/Past due 90 days", with $11,495 owing on the Chase account and $8,158 owing on the Taylor account.

30. The October 27, 2008 Experian report also incorrectly listed both the S. Talman and S. Evans addresses in Mr. Osada's personal information.

31. On October 28, 2008, Mr. Osada filed a report of identity theft with the Niles Police Department.

32. On October 2, 2009, Mr. Osada executed a Federal Trade Commission Identity Theft Victims' Complaint and Affidavit ("FTC Affidavit").

### The Taylor Account and the S. Talman Property

33. On November 24, 2008, Taylor filed a foreclosure action against Mr. Osada in the Circuit Court of Cook County with respect to the S. Talman property.

34. In the foreclosure action, Taylor attempted but failed to serve Mr. Osada at the S.Talman address because Mr. Osada never resided there. Taylor subsequently served Mr. Osada by publication in the Chicago Daily Law Bulletin of notice of the action against the S. Talman property.

35. A judgement of foreclosure was subsequently entered against Mr. Osada in the action on June 4, 2009.

36. After receiving notice from Mr. Osada's counsel that Mr. Osada had been the victim of identity theft with respect to the S. Talman property, Taylor's counsel dismissed Mr. Osada from the foreclosure action.

### The Chase Account and the S. Evans Property

37. In November 17, 2008, Chase's employee, Zack Mathenia, wrote Mr. Osada and stated that Mr. Osada's claim of identity theft had been brought to Chase's attention. In this letter, Chase requested that Mr. Osada provide Chase with certain documentation to assist Chase in its investigation.

38. On November 19, 2008, delivered the requested documentation to Chase via Federal Express, with attention to Mr. Mathenia.

39. On December 16, 2008, Mr. Mathenia, on behalf of Chase, wrote Mr. Osada that Chase had completed its investigation but was "unable to conclude that [Mr. Osada had] been a victim of identity theft."

40. On July 14, 2009, Chase filed a foreclosure complaint against Mr. Osada in the Circuit Court of Cook County with respect to the S. Evans property.

41. In the foreclosure action, Chase attempted but failed to serve Mr. Osada at the S. Evans address, because Mr. Osada never resided there, and subsequently served Mr. Osada by publication in the Chicago Daily Law Bulletin of notice of the action against the S. Evans property.

42. In March 2010, Mr. Osada's counsel notified Chase's foreclosure counsel that Mr. Osada had been a victim of identity theft and sent him the police report and FTC identity theft

affidavit.

43. On March 16, 2010, upon motion by Chase's counsel, the circuit court entered an order finding that Mr. Osada had not signed the mortgage loan or received any proceeds therefrom and that no judgment had been entered against Mr. Osada personally.

### Mr. Osada's Identity Theft Dispute Letters and the Defendant's Responses

44. On January 11, 2010, Mr. Osada sent a letter to both Experian and Chase via certified mail, which attached his FTC Affidavit, a copy of his police report from the Niles Police Department, and proof of residence.

45. In this letter, Mr. Osada requested that Experian block both the Chase account and the Taylor account.

46. Experian received the letter on January 21, 2010.

47. In response, Experian sent Mr. Osada a form letter on January 26, 2010, which misrepresented that Mr. Osada had not submitted a valid identity theft report and declining to block the fraudulent information outright. *See Exhibit3*.

48. This form letter did not explain why Experian believed the identity theft report to be invalid nor did it specify the additional information Experian needed from Mr. Osada.

49. This letter does not contain any notice of the business name and address of any furnisher of information that Defendant contacted upon receiving Mr. Osada's identity theft report nor did Defendant provide such notice to Mr. Osada within 5 business days thereafter.

50. This letter does not contain a notice that Mr. Osada had a right to add a statement to her file disputing the accuracy or completeness of the disputed information nor did Defendant provide such notice to Mr. Osada within 5 business days thereafter.

51. Rather than block the fraudulent information or request specific additional information from Mr. Osada, Experian disregarded its obligations under the FCRA by merely seeking verification of the disputed mortgage accounts from the furnishers of that credit information (Chase and Taylor), who, not surprisingly, verified the disputed information as accurate.

52. For instance, Experian sent Chase notice of Mr. Osada's dispute on January 26, 2010 and requested that Chase verify the disputed information. Chase responded to Experian on January 27, 2010 by verifying the fraudulent information as accurate.

53. Experian then sent Mr. Osada another form letter on February 17, 2010, with an attached updated credit report, which showed that the accounts had been verified as accurate by the furnishers.

54. Mr. Osada sent identical dispute letters to the other major consumer reporting agencies, Equifax and Transunion.

55. As of January 24, 2011, neither the Chase nor the Taylor mortgage accounts appeared on the Mr. Osada's credit report from the other consumer reporting agencies, Transunion and Equifax, who properly removed the information upon receipt of Mr. Osada's identity theft dispute.

56. On April 18, 2011, Plaintiff sent Defendant an additional letter, along with a copy of his FTC Affidavit, Niles Police Report, and proof of residence, again requesting that Experian block the Taylor Account, because the new mortgage servicer for that account, Ocwen Loan Servicing, had reported an additional negative entry for that account to Experian, which was then appearing on Plaintiff's credit report.

57. In response, Defendant sent Plaintiff a letter on May 5, 2011 (Exhibit 1), which stated that Defendant would not honor Plaintiff's request to block because the police report he had

8

submitted was more than a year old.

## Factual Allegations Relating to Ms. Hovanec

58. In June or July 2009, Ms. Hovanec noticed accounts on her credit report that were not hers including a Capital One Auto account for a car loan in excess of $49,000.00, a Capital One credit card account and an ATT account for a cellular telephone.

59. The Capital One credit card was not showing any negative information and was being reported paid as agreed.

60. At this time, Ms. Hovanec subsequently telephoned Capital One Auto Finance to dispute the account.

61. On July 31, 2010, plaintiff submitted to Equifax, Experian and TransUnion her FTC Identity Theft Victim's Complaint and Affidavit, a copy of her police report from the Dallas Police Department and proof of residence.

62. In her July 31, 2010 letter plaintiff requested that credit reporting agencies delete: (1) the Capital One Auto account for the car loan; (2) the a Capital One credit card account and (3) the ATT account for a cellular telephone that was being reported by EOS CCA.

63. Section § 1681c-2 of the FCRA requires the credit reporting agencies to block the disputed identity theft accounts within four days of receipt of plaintiff's dispute package.

64. Rather than block the information as required Experian sent Ms. Hovanec the same form letter it sent Mr. Osada. See *Exhibit 2*.

65. The letter misrepresented that Ms. Hovanec had not submitted a valid identity theft report and declined to block the fraudulent information outright. *Id*.

66. This form letter did not explain why Experian believed the identity theft report to be

9

invalid nor did specify the additional information Experian needed from Ms. Hovanec.

67. This letter does not contain any notice of the business name and address of any furnisher of information that Defendant contacted upon receiving Ms. Hovanec's identity theft report nor did Defendant provide such notice to Ms. Hovanec within 5 business days thereafter.

68. This letter does not contain a notice that Ms. Hovanec had a right to add a statement to her file disputing the accuracy or completeness of the disputed information nor did Defendant provide such notice to Ms. Hovaenc within 5 business days thereafter.

69. Experian disregarded its obligations under the FCRA by merely seeking verification of the disputed account from the furnishers of that credit information without requesting any specific additional information from Ms. Hovanec. While Experian eventually deleted the accounts in question, it's failure to block allowed the furnishers to continue to attempt to collect the fraudulent accounts, which they would have been prohibited from doing, if the accounts were blocked.

## Count I (Class Claims) - FCRA 15 U.S.C. § 1681c-2

70. Plaintiffs re-allege and incorporate the above factual paragraphs herein.

71. According to standardized policies and procedures, Experian willfully treats valid identity theft claims as common credit disputes.

72. According to standardized policies and procedures and despite having no legal authority to do so, Experian willfully declines to block the reporting of fraudulent information in credit reports whenever it is presented with an identity theft report that is older than one year in violation of 15 U.S.C. § 1681c-2.

73. For any identity theft claims Experian deems as lacking in information, Experian

willfully, and according to standardized policies and procedures, fails to specify the additional information or documentation it needs from the consumer as required by 16 CFR 603.3 and only requests such information after declining the consumer's request to block.

74. Additionally, Defendant willfully, and according to standardized policies and procedures, violated the FCRA by failing to provide the notice required by 15 U.S.C. §1681c-2(c)(2) after declining requests to block information.

75. Plaintiffs bring Count One against Experian on behalf of both classes defined above.

76. Both classes are so numerous that joinder of all members is not practicable. Considering Experian's size and its use of standardized form letters, there are likely thousands of members of each class. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

77. Both classes can be identified easily through records maintained by Experian.

78. There are questions of law and fact common to the class members in both classes, which predominate over any questions relating to individual class members. Some of the predominant common questions include:

    a.    For the "One Year Class"

            i.    Whether the submission of an identity theft report older than one year is sufficient reason to justify a consumer reporting agency's denial of a request to block credit information alleged to result from identity theft;

            ii.    Whether Experian's denials of the request to block information alleged to result from identity theft were lawful.

11

       iii.     Whether Experian provided the notice required by 15 U.S.C. §1681c-2(c)(2) after declining the requests to block information.

   b.     For the "Does Not Meet the Guidelines Class"

       i.     Whether, in the absence of a determination of fraud or mistake, a consumer reporting agency must request additional information it believes to be lacking from a person making a claim of identity theft before declining a request to block;

       ii.     Whether a consumer reporting agency must specify the particular information it believes to be lacking when it requests additional information from a person making a claim of identity theft; and

       iii.     Whether Experian provided the notice required by 15 U.S.C. §1681c-2(c)(2) after declining the requests to block information.

79.    Plaintiffs will fairly and adequately represent the members of both classes. Plaintiffs have retained counsel experienced in class actions and collection abuse litigation. Plaintiffs' claims are typical of the claims of the class members because they are all based on the same factual and legal theories. Plaintiffs have no interests adverse to any member of the class or sub-class.

80.    A class action is appropriate for the fair and efficient adjudication of this matter. Members of the class and sub-class are likely unaware of their rights and, even if they are, the interest in individually controlling the prosecution of separate claims is small because of the limited damages available. There are likely thousands of possible individual actions for both classes, many of which are not economically feasible on their own.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and

the class members, and against Experian for :

    A.    Statutory damages and punitive damages pursuant to 15 U.S.C. § 1681n;

    B.    Attorney fees and costs pursuant to 15 U.S.C. §1681n; and

    C.    Any other relief the Court deems just and proper.

**Count II (Osada Claim against Experian) - FCRA 15 U.S.C. § 1681i**

81.    Mr. Osada re-alleges and incorporates the above factual paragraphs herein.

82.    In the alternative to Mr. Osada's claim under 15 U.S.C. § 1681c-2, Experian failed to conduct a reasonable reinvestigation of the credit information disputed by Mr. Osada in violation of 15 U.S.C § 1681i by ignoring overwhelming evidence that the credit information was fraudulent.

83.    The lack of reasonableness in Experian's actions and omissions is further evidenced by TransUnion and Equifax properly blocking the fraudulent information after they were provided with the same evidence of identity theft that was provided to Experian.

84.    WHEREFORE, Mr. Osada requests that the Court enter judgment in favor of him, and against Experian for:

    A.    Actual damages, statutory damages, and punitive damages pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o;

    B.    Attorney fees and costs pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. § 1681o; and

    C.    Any other relief the Court deems just and proper.

**Count III (Osada's Claim against Experian) - FCRA 15 U.S.C. § 1681e**

85.    Mr. Osada re-alleges and incorporates the above factual paragraphs herein.

86. Experian failed to follow reasonable procedures to assure the maximum possible accuracy of the information in Mr. Osada's credit report in violation of 15 U.S.C. § 1681e(b).

87. The lack of reasonableness in Experian's actions and omissions is further evidenced by TransUnion and Equifax properly blocking the fraudulent information after they were provided with the same evidence of identity theft that was provided to Experian.

88. The appearance of the incorrect Chase and Taylor trade lines was the direct and proximate result of Experian's willful or negligent failure to maintain reasonable procedures to assure the maximum possible accuracy of Mr. Osada's credit report in violation of the 15 U.S.C. § 1681e(b).

WHEREFORE, Mr. Osada requests that the Court enter judgment in favor of Mr. Osada, and against Experian for:

    A. Actual damages, statutory damages, and punitive damages pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o;

    B. Attorney fees and costs pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. § 1681o; and

    C. Any other relief the Court deems just and proper.

Respectfully submitted,

David Osada and Kimberly Hovanec, the plaintiffs.

By:   /s/ Keith J. Keogh
One of his Attorneys

Keith J. Keogh
Timothy J. Sostrin
Keogh Law, Ltd.
101 N. Wacker Dr., Suite 605

Chicago, Il 60606
312.726.1092/312.726.1093 (fax)
Keith@keoghlaw.com

## JURY DEMAND

Plaintiffs demand trial by jury.

/s/ Keith J. Keogh
Attorney for Plaintiffs