**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DAVID OSADA and KIMBERLY
HOVENAC,

                  **Plaintiffs,**

        **v.**

EXPERIAN INFORMATION
SOLUTIONS, INC.,

                **Defendant.**

**Case No. 11 C 2856**

**Hon. Harry D. Leinenweber**

<u>**MEMORANDUM OPINION AND ORDER**</u>

    Pending before the Court are Plaintiffs' Amended Motion for Class Certification and Plaintiffs' Motion to Compel Responses from Defendant. For the reasons stated herein, the Motions are granted.

## I.  <u>BACKGROUND</u>

    The Court presumes familiarity with its March 2012 Order [Dkt. 62], and accordingly, provides an abbreviated version of the factual background. *See Osada et al. v. Experian*, No. 11-C-2856, 2012 WL 1050067 (March 28, 2012).

    On March 28, 2012, this Court certified one of the two putative classes Plaintiff David Osada ("Osada") sought to certify for his lawsuit against Experian Information Solutions, Inc. ("Experian") for violations of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681. The Court certified Plaintiff's "One Year" class ("Class A"), but denied the proposed "Does Not Meet

Guidelines" class ("Class B"), determining that Osada was not an adequate class representative pursuant to Federal Rule of Civil Procedure 23(a)(3)–(4).

In light of this ruling, Plaintiff filed an Amended Motion to Certify Class B [Dkt. 65], and also filed a Second Amended Complaint adding Kimberly Hovanec ("Hovanec") as an individually named Plaintiff and the proposed class representative for Class B. [Dkt. 68].

Hovanec alleges that in or about June 2009 she noticed accounts on her credit report that did not belong to her. Specifically, Hovanec alleges that she noticed a Capital One Auto account for a car loan in excess of $49,000.00 as well a Capital One credit card account and an AT&T account for a cellular telephone. Subsequently, Hovanec contacted Capital One Auto Finance to dispute the account, and also contacted Experian to request that a block be placed on these accounts.

On July 31, 2010, Plaintiff submitted her Federal Trade Commission ("FTC") Identity Theft Victims' Complaint and Affidavit, a copy of her police report, and proof of residence to Experian. With this submission, Hovanec requested that Experian block the disputed accounts. Rather than blocking the accounts, Hovanec alleges that Experian responded to her request by sending a letter informing Hovanec that her submissions were insufficient.

Experian's letter (the letter which all of the proposed Class B members received) states, in part:

> We are responding to your request that information in your personal credit report be blocked due to the alleged fraud. The identity theft report that you sent us does not meet the guidelines established by the federal Fair Credit Reporting Act; therefore, we are unable to honor your request to block information. However, if you provided specific information, we are investigating the information you questioned with the sources. If you still wish to have this information blocked, please send us a valid identity theft report.

Pls.' Second Amend. Comp.; Ex. 2.

The letter continues by listing what Experian looks for in a valid identity theft report, but fails to specify exactly what was missing from the materials Hovanec and other class members submitted. Experian claims this omission is intentional to avoid fraudulent claims. Hovanec alleges that the letter misrepresented that Hovanec's submissions were insufficient and further alleges that the letter did not contain the requisite notice of the business name and address of any furnisher of information that Experian contacted after receiving Hovanec's identity theft report. Hovanec avers that this letter and its lack of notice violated the FCRA. Specifically, Plaintiffs Hovanec and Osada (collectively, the "Plaintiffs") allege that Experian is liable under 15 U.S.C. § 1681c-2(c)(2) because Experian willfully failed to provide the requisite notice after declining requests to block information and failed to specify the additional information or documentation it

needed from the consumer upon receiving requests to block pursuant to 16 C.F.R. § 603.3.

Hovanec now seeks to bring a claim on behalf of putative Class B, alleging that Experian willfully failed to block information that class members identified as identity theft related. Hovanec proposes Class B to include:

> All persons to whom Experian sent a letter between April 28, 2009 and May 18, 2011 stating at least in part: 'We are responding to your request that information in your personal credit report be blocked due to alleged fraud. The identity theft report that you sent us does not meet the guidelines established by the federal Fair Credit Reporting Act; therefore we are unable to honor your request to block information. However, if you provided specific information, we are investigating the information you question with the sources . . .'

Pls.' Amend. Mot. to Certify at 4.

## II. **LEGAL STANDARD**

To certify a class under FED. R. CIV. P. 23 ("Rule 23"), a court must find: (a) that the class is definite enough that its members are identifiable, and (b) that it satisfies not only the requirements of Rule 23(a), but also one of the three subsections of Rule 23(b). *Jamie S. v. Milwaukee Pub. Sch.,* 668 F.3d 481, 493 (7th Cir. 2012). Rule 23(a) requires that class members be so numerous that joining each is impracticable (numerosity); that there be class-wide questions of law or fact (commonality); that the named parties' claims or defenses be typical of the class (typicality); and that the representative be able to protect the class's interests adequately (adequacy). Rule 23(a).

- 4 -

Here, Plaintiffs proceed under Rule 23(b)(3), which provides that certification is appropriate if the common questions of law or fact "predominate over any questions affecting only individual members, and . . . a class action is superior" to other available adjudication methods. Rule 23(b)(3). The Court must conduct a rigorous analysis to determine whether Plaintiffs have shown, by a preponderance of the evidence, that the class meets the Rule 23 criteria. *Messner v. Northshore Univ. Health Sys.*, --- F.3d ----, 2012 WL 129991, at *4 (7th Cir. 2012). In doing so, the Court must resolve material disputed facts. *Id.*

### III. <u>DISCUSSION</u>

In 2003, Congress amended the Fair Credit Reporting Act ("FCRA," 15 U.S.C. 1681 *et seq.*) to increase protection for victims of identity theft. *See* Pub. L. 108-159 (December 4, 2003). One new provision generally requires "consumer reporting agencies" ("CRAs") such as Experian to block information in a consumer's credit report if that information resulted from identity theft. The CRA must do so within four days of receiving certain documentation of the identity theft. 15 U.S.C. § 1681c-2(a). That documentation includes: proof of the consumer's identity; a copy of "an identity theft report"; identification of what information should be blocked; and the consumer's statement that the disputed information does not relate to any transaction that she made. *Id.* Once a CRA receives the necessary information and places the block,

it must inform the "furnisher" of the blocked information. 15 U.S.C. § 1681c-2(b).

The FCRA defines "identity theft" and "identity theft report" and authorizes the FTC to add to those definitions by regulation. 15 U.S.C. § 1681a(q). Thus, for the FTC's purposes, an "identity theft report" is a report that:

(1) alleges identity theft with as much specificity as the consumer can offer;

(2) is a copy of "an official, valid report" that the consumer filed with a federal, state, or local law enforcement agency, and which subjected the consumer to criminal penalties if the report is false; and

(3) "may include additional information or documentation that . . . [a CRA] reasonably requests for the purpose of determining the validity of the alleged identity theft[.]"

16 C.F.R. § 603.3(a).

However, if a CRA requests additional information, it must do so within 15 days of receiving the consumer's block request or identity theft report, and generally must make any additional requests and its final decision on whether to place the block within 15 days after its first request for additional information. *Id.*

The regulation also provides examples of when it would or would not be reasonable to request additional information or documentation. 16 C.F.R. § 603.3(b, c). One such example provides that, if a CRA receives a police report containing detailed

information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without "an identifiable concern," such as an indication that the report was fraudulent. 16 C.F.R. § 603.3(c)(1).

The FCRA gives CRAs some authority to decline or rescind requested blocks. 15 U.S.C. § 1681c-2(c). A CRA may do so if it "reasonably determines that[:]" (a) the block was requested or placed in error; (b) the block or request was based on a material misrepresentation of fact by the consumer; or (c) the consumer received goods, services, or money as a result of the blocked transaction. 15 U.S.C. § 1681c-2(c)(1). If a CRA declines or rescinds a block, it must "promptly" notify the consumer "in the same manner as . . . under section 1681i(a)(5)(B) of this title." 15 U.S.C. § 1681c-2(c)(2). Section 1681i(a)(5)(B), as applicable here, requires that a CRA notify the consumer in writing (or by other consumer-approved means) within five days. 15 U.S.C. § 1681i(a)(5)(B)(ii). "[A]s part of, or in addition to" that notice, the CRA must tell the consumer what has been declined or un-blocked, the name and contact information of the business that furnished the information at issue, and that the consumer has a right to add a statement to her consumer report that the information is disputed. 15 U.S.C. § 1681i(a)(5)(B)(iii).

Accordingly, the FCRA gives CRAs discretion in two areas: "reasonably requesting" additional information, and "reasonably determining" whether a block request is fraudulent or mistaken. The Court gives the "reasonable request" requirement its most natural reading — that both the substance and manner of request must be reasonable.

Any person who willfully fails to comply with the FCRA can be liable to the affected consumer for: (a) either actual damages or statutory damages of $100 to $1,000, (b) punitive damages, and (c) fees and costs. 15 U.S.C. § 1681n. Negligent violations bring liability for actual damages, plus fees and costs. 15 U.S.C. § 1681o. With respect to Class B's claim, Plaintiffs proceed under the "willfulness" provision.

## A. Rule 23(a) Factors

In its March 28, 2012 ruling, the Court determined that Class B satisfies the numerosity and commonality requirements. *See* [Dkt. 62 at 18-19]. Experian does not challenge Plaintiffs' ability to satisfy these factors. Therefore, the Court only will address whether Hovanec satisfies the typicality and adequacy factors.

### 1. *Rule 23(a)(3) Typicality*

In order to satisfy the typicality requirement of Rule 23(a)(3), "the claims and defenses of the class representative must be typical of the claims and defenses of the putative class

- 8 -

members." *Quiroz v. Revenue Production Management, Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008). However, "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

Experian argues that Hovanec fails to satisfy the typicality requirement of Rule 23 because Hovanec's claim of identity theft was fraudulent, and she therefore has no legal claim. The Court is not persuaded. While in its briefs opposing the certification of Class B, Experian goes to great lengths to state its basis for believing that Hovanec's identity theft claim was fraudulent, Experian also questions the validity of the identity theft claims that other members of the proposed Class B submitted. Assuming this is true, the fact that Hovanec's claim could be fraudulent would not, according to Experian, make her an atypical member of Class B. Further, Experian undermines its own argument that Hovanec's claims are fraudulent. It emphatically asserts that Hovanec's identity theft claim was fraudulent, and then in the same breath, argues that she is not an adequate class representative because the accounts she requested were eventually blocked. If Hovanec's claims were fraudulent, the Court finds it strange that Experian would eventually block the accounts. Thus, the Court

rejects Experian's argument that Hovanec is atypical because her claims may be fraudulent. *See Levie v. Sears Roebuck & Co.*, 496 F.Supp.2d 944, 950 (N.D. Ill. 2007) ("[c]redibility is not a requirement of a class representative, and whether or not a plaintiff is credible is irrelevant to that person's ability to be a class representative.")

Hovanec's proposed class includes members who received the exact same "Does Not Meet the Guidelines" letter she received after reporting an identity theft to Experian between April 28, 2009 and May 18, 2011. Thus, the Court finds Hovanec's claims to be sufficiently typical of the class. *See also Pawelczak v. Fin. Recovery Servs.*, No. 11 C 2214, U.S. Dist. LEXIS 153914 at *10-11 (N.D. Ill. Oct. 26, 2012).

## 2. *Rule 23(a)(4) Adequacy*

Rule 23(a) provides that the named class member must be capable of "fairly and adequately represent[ing] the interests of absent class members." FED. R. CIV. P. 23(a)(4). When making this determination, the Court must inquire whether the named plaintiff has "antagonistic or conflicting claims with other members of the class or (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) has counsel that is "competent, qualified, experienced and able to vigorously conduct the litigation." *Quiroz*, 252 F.R.D. at 442 citing *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 297 (N.D. Ill. 2007).

For starters, this Court previously found class counsel sufficiently adequate. [Dkt. 62 at 19.] Experian does not contest Plaintiffs' counsel's qualifications or ability under 23(a)(4). As such, the Court determines class counsel is sufficiently adequate.

Next, in Plaintiffs' first attempt at class certification, the Court determined Osada failed to meet his burden of showing adequacy of representation because Osada could not remember whether and when he received the letter from Experian stating that his submitted information was insufficient. The Court found these facts persuasive in finding Osada an inadequate class representative because Osada would be unable to offer competent evidence "of the burdens that . . . [Experian's] policy and letter impose on consumers." *Id.* at 21.

In Plaintiffs' Amended Motion to Certify Class B, Hovanec alleges that she is an adequate class representative because her claims are based on the same legal theory as all the other class members – that is, that "(1) Experian wrongfully rejected their requests to block before seeking additional information, (2) Experian wrongfully failed to specify the particular additional information it believed to be lacking, and (3) Experian failed to provide the required noticed upon declining their requests to block." Pls.' Amend. Mot. to Certify at 7. Plaintiffs assert that Hovanec is an adequate class representative because in her deposition she testified that she remembered receiving and reading

the letter and remembered being confused by its contents. *See* Pl. Hovanec's Memo. in Supp. of Amend, Mot. to Cert. Class B.; Ex. 3.

Experian argues that Hovanec is an inadequate class representative because she failed to submit the requisite threshold items under § 1681c-2 – namely that she failed to provide proper proof of identification. However, the Court finds Experian's argument strange in light of its statement that the "Does Not Meet the Guidelines Letter" "can be sent to both consumers who have not submitted the four threshold items as well as to consumers that have done so." Defs.' Opp. to Pl. Kimberly Hovenac's Mot. for Class Cert. and Mot. to Compel at 5. Moreover, the Court does not find that Hovanec's claim and the claims of the other members of Class B depend on the submission of the four threshold items in § 1681c-2. This is because Plaintiffs are not challenging Experian's decision to block or not block accounts, but rather seek to challenge the adequacy of Experian's form letter in providing the required notice pursuant to § 1681c-2(c)(2) and challenge the adequacy of the letter in reasonably requesting additional information.

Experian cites *Thomas v. Early Warning Services, LLC*, No. L-10-0825, 2012 WL 37396 (D. Md. Jan. 5, 2012) for the proposition that Experian is not subject the regulations under section 1681c-2 until a consumer has provided (1) proof of the consumer's identity;

(2) a copy of the identity theft report; (3) the identification of such information by the consumer; and (4) a statement by the consumer that the information is not actually information relating to a legitimate transaction of the consumer. *See* 15 U.S.C. § 1681c-2(a). The Court, however, finds *Thomas* readily distinguishable. In *Thomas*, the court granted a defendant credit reporting agency summary judgment because the plaintiff admitted that he never filed a police report, thereby conceding that he failed to submit to the defendant a valid identity theft report as is required under § 1681c-2(a)(2). *Thomas*, 2012 WL 37396 at *2. Here, Hovanec not only filed a police report, but also submitted a valid identity theft report to Experian pursuant to § 1681c-2(a)(2). Moreover, in the other case referenced by Experian, *Collins v. Experian Credit Reporting Services*, the court granted summary judgment to Experian with respect to two individual plaintiffs' claims under 15 U.S.C. § 1681c-1 and 1681c-2 because there was "no evidence to suggest that either Mr. Collins or Mr. Jessup [the plaintiffs] ever contacted any of the Defendants to communicate to them their concerns about identity theft." *Collins v. Experian Credit Reporting Service*, 494 F.Supp.2d 127, 133 (D. Conn. 2007). Additionally, in *Collins*, the court determined that the named plaintiffs were inadequate class representatives because they were proceeding *pro se*. *Id.* at 129.

- 13 -

Here, Experian admits that enclosed with Hovanec's dispute letter were "copies of an Identity Theft Victims' Complaint and Affidavit, a Dallas Police Department Report, a document appearing to be a utility bill (but lacking any name or address), and a document appearing to be an apartment rent statement. Def. Experian Info. Solutions, Inc.'s Answer and Affirmative Defenses to Second Amend. Class Action Compl. at 17. In addition to this distinction, Hovanec and Osada are represented by counsel.

Experian also asserts that *Robinson v. Equifax Information Services, LLC*, No. Civ A CV 040229, 2005 WL 1712479 (S.D. Ala. July 22, 2005) supports its position that Hovanec is an inadequate class representative because she failed to provide the requisite proof of identification pursuant to Section 1681c-2. However, in *Robinson*, the court noted that a CRA has the responsibility to "promptly notify the furnisher" of credit information about a dispute when a consumer has disputed inaccurate information relating to their accounts, and also stated that it is the furnisher's duty to reasonably investigate the dispute. *Id.* at *5. Experian argues *Robinson* stands for the proposition that the regulations under FCRA do not trigger until a consumer has provided all of the requisite items under § 1681c-2.

The Court disagrees with Experian's interpretation. In *Robinson*, the court faced the issue of whether a furnisher of credit information conducted a "reasonable investigation" pursuant

- 14 -

to Section 1681. In determining it had, the court relied on the fact that the plaintiff failed to advise the furnisher defendant that there was a forgery. Instead, the plaintiff merely denied the existence of an account belonging to her. Because of this, the court found the furnisher's investigation sufficient.

Here, Plaintiffs Osada and Hovanec bring suit against Experian, a CRA, not a furnisher. Moreover, Plaintiffs claim that upon receiving the information from Hovanec and other members of Class B, Experian had a duty under § 1681 to notify the furnishers of the credit information at which time those furnishers would conduct a reasonable investigation. In *Robinson*, the plaintiff merely sent a form letter requesting further investigation into an account that was not hers and testified that she never sent to the furnisher or the CRA's any documentation alleging "forgery, fraud, or identity theft." *Id.* at *3.

Experian further alleges Hovanec is an inadequate class representative because she has no injury since her accounts were ultimately blocked. The Court disagrees, and finds the fact that Experian eventually blocked Hovanec's accounts entirely independent from Plaintiffs' claims that Experian violated § 1681 with their form letter. Thus, the Court rejects this argument. Moreover, in its March 28, 2012 opinion, this Court already recognized that the injury at issue is not Experian's failure to block, but instead, is

"Experian's allegedly unreasonable response to block requests." [Dkt. 62 at 18-19].

Finally, Experian argues that the class should not be certified because Hovanec, as well as the other members of the class were not entitled to notice under 1681c-2(c)(2). The Court finds this assertion odd in light of Experian's prior representations that the class should not be certified because one of the individual questions that predominates over the common questions in this litigation is whether Experian "sent proper notification to the consumer." [Dkt. 51 at 12-13]. In light of this and the Seventh Circuit's instruction that the courts should not refuse to certify a class merely because the Court anticipates the class will lose on the merits, the Court does not find that Experian's argument regarding the fact that Hovanec and other consumers were not entitled to notice persuasive. *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir. 2001); see also *Bowen v. Groome*, CIV. 11-139-GPM, 2012 WL 2064702 at *2-3 (S.D. Ill. June 7, 2012) (stating while "a judge should make whatever factual and legal inquiries are necessary under Rule 23 . . . the court should not turn class certification proceedings into a dress rehearsal for the trial on the merits.").

The Court concedes that whether and to what extent members of Class B were entitled to notice under one of the subsections of Section 1681 is an issue in this case. However, the Court

declines, at this juncture, to make that determination. Therefore, the Court finds Hovanec satisfies the adequacy requirement under Rule 23 (a)(4).

## B.  Rule 23 (b) Factors

After finding that the putative class satisfies the Rule 23(a) factors, the Court now must ask whether it meets the requirements of Rule 23(b)(3) – namely, that common questions of law or fact predominate over individual questions, and that a class action is superior to other methods of adjudication.  *See* FED. R. CIV. P. 23(b).

### 1.  Predominance

Plaintiffs argue that individual issues are not likely to predominate in this action, and assert that the primary question is whether the form letter adequately requested the additional information and adequately provided the required notice and that this inquiry is common to the entire class.  Experian argues that individual issues predominate because each individual class member may have received the letter for different reasons thereby triggering different legal obligations.  Experian specifically alleges that because the only instance where it is required to provide notice under 1681c-2(c)(2) is when it makes a final determination that a consumer's block request will be denied, there will be individual issues with respect to each class member in determining whether the letter was a final determination.

- 17 -

Experian, however, fails to cite any authority to support the proposition that this is the only time notice is required under § 1681c-2(c)(2). In light of this, the Court turns to the plain language of the statute. It reads "[i]f a block of information is declined or rescinded under this subsection, the affected consumer shall be notified promptly . . ." *See* 15 U.S.C. § 1681c-2(c)(2). The letter which all members of the proposed Class B received states, "[t]he identity theft report that you sent us does not meet the guidelines . . . therefore, we are unable to honor your request to block information." *See* Pl. Hovanec's Memo. in Supp. of Amend. Mot. to Certify Class B; Ex. 1. Thus, at this time, the Court refuses to conclude that whether each class member is entitled to notice is dependent upon the exact purpose which Experian sent the letter.

The Court also rejects Experian's argument that because some class members did not provide the "threshold items" that this will create individual issues that will predominate. Experian boldly asserts that an individual must submit all threshold items under Section 1681c-2(a) before an individual has a legal claim. Here again, though, Experian fails to provide any authority for this proposition. Additionally, one of the two claims of Class B is whether the letter each member received reasonably requested additional information. This claim survives regardless of whether a plaintiff submits all threshold items.

Experian next argues that individual issues predominate because in some instances, its request for additional information was reasonable. The Court reminds Experian that the claims of Class B do not involve the reasonableness of denying an individual's request to block or whether it was reasonable to request additional information. "Instead the class claims challenge the language of the form letter itself, in that (A) the letter fails to provide the notice required by 15 U.S.C. 1681c-2(c)(2) when a CRA declines to block and (B) the letter fails to reasonably request[] additional information as required by 12 C.F.R. § 1022.3(i)(3) because it does not specify what was lacking in the report already submitted by the consumer . . . "  Pls.' Reply in Supp. of Amend. Mot. to Certify Class B at 3.

The Court finds Experian's argument regarding the fact that some class members could be "fraudsters" equally unpersuasive.  The Court previously addressed this argument in its prior Order and thus refuses to belabor it again here.  The FCRA provides consumers procedural rights; a consumer need only show that the FCRA was violated with regard to his or her own information to show a sufficient injury.  *Henry v. Teletrack, Inc.*, No. 11-CV-4424, 2012 WL 769763, at *3 (N.D. Ill. March 7, 2012).  Therefore, the Court need not individually examine the validity of each class member's identity theft claim.  As such, the Court finds the common issues of whether the letter provides adequate notice and whether the

letter reasonably requests additional information without specifying the lacking information predominate.

### 2. Superiority

Under Rule 23(b)(3) the Court must determine whether the proposed class "is superior to other available methods for fair and efficient adjudication of the controversy." *Lemon v. International Union of Operating Eng'rs, Local No. 139*, 216 F.3d 577, 581 (7th Cir. 2000). "A class is superior where potential damages may be too insignificant to provide class members with incentive to pursue claims individually." *Jackson v. Nat'l Action Fin. Servs.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005). The FCRA permits individual plaintiffs to recover up to $1,000 in statutory damages. *See* 15 U.S.C. § 1681. Therefore, the potential recovery for an individual is unlikely to provide sufficient incentive for that individual to bring her/his own claim. As such, the Court finds Plaintiffs satisfy the requirements under Rule 23(a) and Rule 23(b).

### C. Motion to Compel

Plaintiffs ask this court to compel responses to Plaintiffs' Requests for Production #25 ("RFP #25") and Plaintiff Hovanec's Interrogatory #7. Alternatively, Plaintiffs seek an order compelling Experian to answer one of Hovanec's Requests for Admissions. All of Plaintiffs' requests relate to Experian's practice (or lack thereof) of providing a member of Class B written notice that it has the right to add a statement to his or her file

regarding the accuracy of the disputed information. RFP #25 seeks exactly this information, while Plaintiffs' request to admit seeks an admission from Experian that it never sent such notice to any members of Class B. Experian objects to these requests arguing that such information is irrelevant, poses an undue burden, and contains confidential information. Experian argues such information is irrelevant because Hovanec was not entitled to 1681c-2(c)(2) notice and because notice is only required in a limited set of circumstances.

The Court does not agree. Section 1681c-2(c)(2) states "[i]f a block of information is declined or rescinded under this subsection, the affected consumer shall be notified promptly . . ." The Court concedes that Experian's argument that members of Class B who failed to provide the threshold items in 1681c-2 are not entitled to notice may have merit. However, the Court finds that whether Experian provided the notice Plaintiffs seek is relevant to Plaintiffs' claims.

Federal Rule of Civil Procedure 26 governs discovery. It provides that a party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents or tangible things. FED. R. CIV. P. 26(b)(1). In the context of discovery, the Court construes relevancy broadly to encompass "any matter that bears on

or that reasonably could lead to other matter[s] that could bear on, any issues that is or may be in the case." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002); *see also*, *Shapo v. Engle*, 2001 WL 629303 at *2 (N.D. Ill. May 25, 2001) (stating "[d]iscovery is a search for the truth."). Under Federal Rule of Civil Procedure 37, a party may seek an order to compel discovery when the opposing party fails to respond to discovery requests. The burden "rests on the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006). The burden is not satisfied by a "reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome, or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Burkybile v. Mitsubishi Motors*, *Corp.*, No. 04-C-4932, 2006 WL 2325506 at *6 (N.D. Ill. Aug. 2, 2006).

The Court finds that Experian fails to meet its burden regarding Plaintiffs' requests. After examining interrogatory number seven and RFP #25, the Court does not find Plaintiffs' request irrelevant. The Court agrees with Experian only with respect to the breadth of Plaintiffs' request. Because of this, the Court instructs Experian to produce such information for the time period of Class B (April 28, 2009 to May 18, 2011). If any of the documents Plaintiffs seek include confidential consumer

information such as Social Security numbers the Court instructs Experian to redact such information.

Alternatively, if Experian has never sent such notice to any of its consumers for the relevant time period, the Court directs Experian to respond appropriately to Plaintiffs' request to admit. The Court instructs Experian to follow this order within 21 days from the entry of this ruling.

## IV.   CONCLUSION

For the reasons stated herein, the Court rules as follows:

1.   Grants class certification for Class B; and

2.   Grants in part Plaintiffs' Motion to Compel.

**IT IS SO ORDERED.**

_____
        Harry D. Leinenweber, Judge
        United States District Court

**DATE:** 12/20/2012

- 23 -