IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| DAVID OSADA AND KIMBERLY HOVANEC, ) ) ) | |
| Plaintiffs, ) ) | Case No. 11 C 2856 |
| v. ) ) | Hon. Harry D. Leinenweber |
| EXPERIAN INFORMATION SOLUTIONS, INC. ) ) ) ) | |
| Defendant. ) | JURY DEMAND |

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

Plaintiffs, David Osada and Kimberly Hovanec ("Plaintiffs") and their counsel Keogh Law, Ltd., respectfully request that the Court grant this Motion for Preliminary Approval of Class Action Settlement with Defendant, Experian Information Solutions, Inc. ("Experian"). Experian does not oppose this motion. In support of this motion, plaintiff states as follows:

**NATURE OF THE CASE**

1. On August 26, 2011, David Osada filed an amended complaint that commenced a class action against defendant Experian Information Solutions, Inc. alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

2. Specifically, plaintiff alleged Experian's form letter rejecting police reports more than one year old violated the FCRA and Experian's form letter stating an identity theft report does not the meet guidelines of the FCRA was inadequate and thus violated the FCRA.

3. On March 28, 2012, the Court granted class certification to Class A, which is the One Year class. Class A (One Year letter) is defined as: "All persons from whom (1) Experian received an identity theft report and written request to block information in that person's consumer report

alleged to result from the identity theft; and (2) in response to which Experian, between April 28, 2009 and May 18, 2011, sent a letter stating at least in part: 'We are unable to honor your request. Our records indicate that the police report we have on file is more than a year old. Due to your ongoing fraud situation, you will need to submit a new/amended police report, obtained within the past year.'" There are approximately 1,832 persons in Class A.

4. A Second Amended Complaint was filed on April 25, 2012 wherein Kimberly Hovanec was named as an additional Named Plaintiff

5. After additional discovery and extensive briefing, the Court granted class certification to Class B, the Does Not Meet Guideline Class on December 20, 2012. Class B is defined as: "All persons to whom Experian sent a letter between April 28, 2009 and May 18, 2011 stating at least in part: 'We are responding to your request that information in your personal credit report be blocked due to alleged fraud. The identity theft report that you sent us does not meet the guidelines established by the federal Fair Credit Reporting Act; therefore we are unable to honor your request to block information. However, if you provided specific information, we are investigating the information you questioned with the sources.'" There are approximately 14,527 persons in Class B.

6. Subsequently, the Seventh Circuit denied Experian's Rule 23(f) petition as to the December 20, 2012 class certification order for Class B, the Does Not Meet Guideline Class.

7. Prior to mediation, the parties completed extensive discovery regarding plaintiffs' allegations, including contested motion practice regarding the scope of discovery. Among other things, the Parties provided documents, answered multiple sets of interrogatories and requests for the production of documents, Defendant produced various employees for multiple out of town depositions, both Named Plaintiffs were deposed as well as Plaintiffs' expert.

8. On June 11, 2013, the Parties participated in a mediation in front of Mediator Hon. Morton Denlow (Ret.). After an all-day mediation, the Parties reached an agreement in principle to settle the litigation, and have since worked to formalize said settlement.

9. Experian has denied and continues to deny each and all of the claims and contentions alleged in the action. Experian also has asserted and continues to assert many defenses thereto and has expressly denied and continues to deny any fault, wrongdoing or liability whatsoever arising out of any of the conduct alleged in the complaint. Nevertheless, in order to avoid the burden and expense of continued litigation, Experian considers it desirable that the action and the claims alleged therein be settled.

10. Counsel for plaintiffs have reviewed and analyzed the legal and factual issues presented in this action, the information provided by defendant and third parties in discovery, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcome of one or more procedural and substantive appeals. Based on the review and analysis, and after arms-length negotiations, the parties entered into the Settlement Agreement.

**TERMS OF THE SETTLEMENT**

11. If approved, the settlement will provide: (1) a two-year injunction from using the language that plaintiffs complained about in both of Experian's letters; (2) two years of Protect My ID credit monitoring valued at $6,249,138.00 for the class or $382 value per class member; and (3) class members retain their right to bring a lawsuit for actual damages, as the release is limited to claims for statutory and punitive damages based on any violation by any of the Released Parties of

Section 1681c-2 of the federal Fair Credit Reporting Act and/or any federal or state law counterpart, including, but not limited to, 12 C.F.R. § 1022.3.

12. Each class member will automatically be entitled to the credit monitoring without the need to submit a claim form. Further, this case involves Experian's letters in response to requests to block information related to claims of identity theft such that credit monitoring is especially valuable to the class members.

13. Separate and apart from the above relief, Experian will pay Third Party Settlement Administration Costs and a class representative incentive award to Plaintiffs in an amount to be determined by the Court, but not to exceed $10,000 for each plaintiff[1]. Experian has also agreed not to object to attorney fees not to exceed $950,000 and costs up to $50,000.00.

14. Plaintiffs and counsel for plaintiffs and the class believe that the settlement of this action on the terms and conditions set forth in the Settlement Agreement is fair, reasonable and adequate, and would be in the best interests of the putative class members.

## THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

15. Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion." There is usually an initial presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg, A. Conte, Newberg on Class Actions §11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374,

---

[1] David Osada settled his individual claim for $10,000 as well.

4

1995 WL 17009594, at *3 (N.D. Ill. Oct. 10, 1995); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975).

16. As the Seventh Circuit recognizes, courts generally favor settlements of class actions:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, '"there is an overriding public interest in favor of settlement."' Settlement of the complex disputes often involved in class actions minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir.1980)(citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

17. District court review of a class action settlement proposal is a two-step process. At the preliminary approval stage, the question for this Court is whether the settlement falls within the "range of possible approval," and is sufficiently fair, reasonable and adequate to warrant dissemination of notice apprising Class Members of the proposed settlement and to establish procedures for a final settlement hearing under Rule 23(e). Newburg, *supra*, at §11.41. If the district court preliminarily approves a class action settlement, it then proceeds to the second step in the review process, the fairness hearing. Manual for Complex Litigation (Fourth) §21.633 (2004).

18. In assessing the fairness, reasonableness and adequacy of a settlement, courts consider the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendants' ability to pay; (3) the complexity, length and expense of trial; (4) the presence of collusion in reaching a settlement and (5) the stage of the proceedings and the amount of discovery completed. *Armstrong*, 616 F.2d at 314, (citations

omitted); *Synfuel Techs., Inc.,* 463 F.3d at 653; *In re General Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1132 (7th Cir.1979) (citations omitted); *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir.1996). Of these considerations, the first is most important. *Synfuel Techs., Inc.,* 463 F.3d at 653.

**All Of The Factors Weigh In Favor Of Preliminary Approval**

**a. The Settlement Provides Significant Benefits To The Class.**

19. In an FCRA case, a plaintiff is only entitled to statutory damages between $100 and $1,000 if they can prove a willful violation of the Act.

20. While plaintiffs submit that they have a strong claim, plaintiffs recognize that Experian has defenses to the claims. As such, the credit monitoring valued at $382 per class member ( Total value of $6,249,138.00) without the need to submit a claim form provides substantial benefit to the classes. In fact, in a similar settlement providing credit monitoring to the class, the district court held that "Although Experian could withstand a statutory damage judgment of $1,000 per class member, 15 U.S.C. § 1681n, the settlement value of $382.00 per class member [value of two years of the same credit monitoring], worth $5,943,920, constitutes 38.2% of the maximal recovery, a handsome result to the class measured against the ultimate risks and delay associated with ultimately establishing liability." *Sapp v. Experian Info. Solutions, Inc.*, 2013 U.S. Dist. LEXIS 71279, *7 (E.D. Pa. May 14, 2013) (granting final approval to the class settlement.)

21. In addition, the class benefits because Experian has agreed to a two-year injunction[2] from using the language that plaintiffs complained about in Experian's letters and class members retain their right to bring a lawsuit for actual damages, as the release is limited to claims for statutory and punitive damages based on any violation by any of the Released Parties of Section 1681c-2 of

---

[2] Injunctive relief is not available to private litigants such that class members have obtained a benefit that they would have not been entitled to at trial.

6

the federal Fair Credit Reporting Act and/or any federal or state law counterpart, including, but not limited to, 12 C.F.R. § 1022.3.

### b. The Settlement Resulted From Extensive Arms-Length Negotiations And Is Not The Product Of Collusion

22. As a leading treatise on class action jurisprudence explains, "…decisions indicate that the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." Newberg, §11.51. *See also*, Section IV(1)(A), *supra* (there is an initial presumption of fairness when a settlement has been negotiated in arms-length by experienced counsel). The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Continental Illinois Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684, 9 Fed. R. Serv. 3d (LCP) 909 (7th Cir. 1987) (approved settlement upon finding of no "hanky-panky" in negotiations). There usually is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. Newberg, §11.42.

23. Settlement was reached after both classes were certified, Experian's Rule 26(f) petition was denied and discovery was complete, which consisted of hotly contested discovery motions, out of town depositions, including plaintiff's expert and a mediation before Hon. Morton Denlow (Ret.).

24. The significant economic benefit to the Settlement Class, demonstrate that the settlement is more than fair, reasonable and adequate.

### c. The Proposed Notice To Class Members Is Adequate

25. Under Federal Rule of Civil Procedure 23(c)(2), class members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by


the Court. Manual for Complex Litig. (Fourth) § 21.31 (2004). Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974), *quoting, Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

26. The Notice the parties propose here is clear and straightforward, providing putative class members with enough information to evaluate whether to participate in the Settlement, as well as directions on how to seek further information. The Notice contains all of the information required by Rule 23, such as the nature of the action; the class definitions; summary of the class claims and defenses; the amount paid for a claim; the potential class representative fee and attorneys' fees and costs; ability to enter an appearance; exclusion rights; objection rights and binding effect of a class judgment on members under Rule 23.

27. Notice will be provided by U.S. mail no later than forty five (45) days after the entry of the Preliminary Approval Order. For up to forty-five (45) days following the class notice, the Claims Administrator will re-mail the Notice via standard U.S. mail, postage prepaid, to updated addresses of Settlement Class Members to the extent that it receives address change notifications from the U.S. Postal Service.

28. The Claims Administrator will also set up a settlement website that will contain the relevant court documents and have a page that will allow Settlement Class Members to obtain enrollment codes in order to use their credit monitoring program.

29. The notice scheme the parties propose is consistent with the due process requirements incorporated in Rule 23(c)(2)(B). Rule 23's advisory committee note states that the "mandatory notice pursuant to subdivision (c)(2) . . . is designed to fulfill requirements of due process to which

8

Case: 1:11-cv-02856 Document #: 121 Filed: 08/07/13 Page 9 of 9 PageID #:1455

the class action procedure is of course subject." Fed. R. Civ. P. 23(d)(2) advisory committee's note. (*citing*, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (additional citations omitted).

30. Accordingly, plaintiffs respectfully submit, the Settlement Agreement and the settlement are sufficient to warrant notice thereof, as set forth below, and a full hearing on the settlement.

31. The parties have agreed to the form of the draft preliminarily approval order attached to the Settlement Agreement as *Exhibit A* and again hereto as *Appendix 2*, which provides:

1) setting a date for a final approval hearing ("Court Approval Hearing");

2) approving sending the proposed Class Notice in the form that is attached to the Settlement Agreement as *Exhibit B*;

3) setting deadlines for mailing of the Class Notice, the filing of objections, the submission of requests for exclusion from the Settlement Class, and the filing of papers in connection with the Court Approval Hearing;

WHEREFORE, plaintiffs respectfully request that this Court enter an order in the form of *Appendix 2*.

Respectfully submitted;

/s/Keith J. Keogh

Keith J. Keogh
Timothy Sostrin
Katherine Bowen
KEOGH LAW, LTD.
55 W. Monroe, Suite 3390
Chicago, IL 60603
(312) 726-1092/(312) 726-1093 (fax)
Keith@Keoghlaw.com

9